THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM HOYE WOOD, Defendant-Appellant.

(No. 12316;

Fourth District—November 27, 1974.

16

Lawrence E. Johnson and Associates, of Champaign (L. Keith Hays, of counsel), for appellant.

Robert G. Gammage, State's Attorney, of Clinton (Kenneth E. Baughman, of counsel, assisted by Douglas Gift, Charles Gustafson, and Bruce Gammage, Senior Law Students), for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Defendant was indicted, tried and found guilty in a bench trial of three counts of aggravated battery and one count of disorderly conduct. After a lengthy presentence hearing, defendant was sentenced to 2 years' probation, subject to certain conditions and fined $500. Defendant appeals from his conviction. It is urged on appeal that the trial court erroneously found that defendant's belief that it was necessary to use deadly force calculated to prevent death or great bodily harm to himself was unreasonable, and that defendant's guilt was not established beyond a reasonable doubt. We do not agree.

The altercation that gave rise to this cause took place outside Mary's Tavern located in Clinton, Illinois, where defendant beat and kicked Columbus DuBois, a 78-year-old black male. The incident started inside the tavern when DuBois was verbally harassed by defendant. Defendant

and his two companions were ordered to leave the tavern by the proprietress. They refused to go. Defendant persisted in harassing DuBois by demeaning his race. Finally, defendant approached DuBois, and the latter turned and pulled an open pocket knife. The proprietress took DuBois by the arm and told him to leave in order to avoid any serious trouble. He put his knife away and left the premises. Thereafter, defendant and his confederates were ordered to leave which they did.

Once outside, defendant accosted DuBois by striking him in the face with his fist. He then kicked at DuBois' head, once the latter was down. After DuBois had been beaten into unconsciousness, defendant and the other two individuals drove away in a pickup truck. The police found DuBois unconscious and bleeding from his face and head, and a knife was found under his body. DuBois sustained a permanent eye injury as the result of the incident, as well as other assorted cuts and abrasions.

Mr. DuBois was approximately 5'2" tall, having a small frame. Defendant stood 6'2½" tall and weighed approximately 245 lbs.

Defendant was subsequently indicted on one count of attempted murder, five counts of aggravated battery, and one count of disorderly conduct.

At trial, the State called Joyce McGarry, the proprietress of the tavern. She related that *defendant started an argument* with DuBois which had racial overtones and that DuBois became hostile when defendant persisted in harassing him. She testified that after clearing DuBois and defendant out of the tavern, she observed defendant and DuBois standing outside and continuing their argument. She saw defendant hit DuBois in the face. She ran outside and observed defendant kicking DuBois in the head several times, and each time cursing, "You nigger, son-of-a-bitch, you nigger." Mrs. McGarry stated she did not observe a knife in DuBois' hand when viewing him through the window. She had seen him put away what appeared to be a knife as he left the tavern.

Next, Doug Cox was called by the State. He testified that on the night in question, he was returning from a show when he heard a commotion going on in front of Mary's Tavern. He viewed defendant kicking DuBois while he lay on the sidewalk. He had not seen a knife in DuBois' hand. He watched defendant and defendant's two companions drive away in a truck. He went over to DuBois and found that he was bleeding profusely. Cox stated that he did see a knife lying on the pavement next to DuBois. The knife was open. Cox testified that the knife was the same one Mrs. McGarry had identified as being one DuBois had when he was in the tavern.

The State called DuBois as the final occurrence witness. He corroborated Mrs. McGarry's testimony. He stated that defendant began

harassing and directing racial slurs at him while he was at the bar in Mary's Tavern. DuBois admitted taking a knife out in the bar when he thought defendant and his two companions were "corraling" him. However, he stated he closed the knife and put it in his pocket as he left the premises. Once outside, DuBois stated that he was struck in the face by defendant's fist and then defendant kicked him while he was on the pavement.

DuBois stated that as a result of the beating he sustained indicated damage to his eye. This conclusion was corroborated in the testimony of Dr. Robert S. Baller, an eye surgeon and ophthalmologist who treated DuBois for his eye condition.

After Dr. Baller's testimony, the State called several other witnesses and then rested. Thereafter, the defendant offered a motion for a finding of not guilty as to all counts of the indictment. The motion was granted as to Counts IV and V, both charging defendant with aggravated battery.

Defendant's case consisted of the testimony of two witnesses: William Fair, a co-defendant, and defendant, who testified on his own behalf. The thrust of the defendant's case-in-chief was that defendant acted in self-defense and was forced to use force reasonably calculated to prevent DuBois from inflicting great bodily harm upon the person of defendant.

Fair's testimony was at odds with the testimony elicited from the State's witnesses. He, in effect, testified that it was DuBois who started the argument which occurred in Mary's Tavern, and it was DuBois who interjected the element of deadly force into the argument by the threatening use of a knife. According to Fair, defendant acted in self-defense.

Defendant testified that the entire incident began over a misunderstanding. He submitted that he had stated to DuBois, "Nice meeting you, Columbus, I got a lot of negro friends." According to defendant, DuBois thought he had said "nigger." Defendant said he immediately apologized for the misunderstanding.

Concerning the altercation that occurred outside the tavern, defendant contended that DuBois waited outside, and when defendant went outside, DuBois pulled a knife and said he was going to cut defendant up. DuBois allegedly began to swing at defendant with the knife. Defendant stated his natural instinct was to swing at DuBois in self-defense. He stated his blow hit DuBois in the eye. Once DuBois was on the ground, he stated he kicked the knife out of DuBois' hand. Wood stated that he and his two companions fled because they were in a strange town and feared that the authorities would be unsympathetic because "they had hit an old man."

On cross-examination, defendant stated that he kicked the knife out

of DuBois' hand so that it could not be used on him as he walked away. Defendant was asked whether he was afraid of a man the size of DuBois, and defendant replied, "I am not afraid of anyone." Thereafter, the defense rested.

The State called three rebuttal witnesses. All had previously testified, and they basically reiterated their initial testimony.

After closing arguments, the court found Fair not guilty as to all counts, and found defendant not guilty as to Count I and guilty as to Counts II, III, VI and VII.

The court specifically found that DuBois suffered severe and permanent injuries constituting great bodily harm. Furthermore, the court found that under the circumstances, defendant used excessive force. The court stated:

> "Now, taking Mr. Wood's theory of self-defense in its most favorable aspect to him, this Court feels that he was justified in the first hitting if Mr. DeBois struck at him as some of the evidence indicates, but his right to self-defense stopped there in this Court's opinion because self-defense under the Illinois law does not permit him to pursue it against an elderly man laying on the ground semi-conscious and bleeding. The force that was used then was not justified as a matter of self-defense, Mr. Wood could have protected himself in a number of ways after the initial blow. * * *"

The court then went on to find:

> "Taking that in its most favorable aspect, the Court considers the first blow Mr. Wood struck may have been justified in self-defense but not the other blows. He pursued it with unjustifiable force and unreasonable force thereafter and therefore at that point he was the aggressor and he could have withdrawn.
>
> The evidence of Joyce McGarry is most credible. She had the best opportunity to observe, and she is least interested in the outcome of the case. Her testimony is believable.
>
> Because the testimony was that the injuries were severe and permanent and, possibly, even the extent of which are not known at this time, they constitute great bodily harm. Therefore, the other Counts II, III and VI, this Court feels, were proven beyond a reasonable doubt.
>
> As to Count VII this is a disorderly conduct charge, and I think it was proven, also, beyond reasonable doubt.
>
> That will be the finding of the Court."

Defendant urges that the trial court misperceived the law of justifiable use of force when it separated the altercation into two parts, to wit: the

initial blow by defendant to Mr. DuBois, and the subsequent kicking by defendant to DuBois' body. Defendant argues that a person is justified in the use of force to defend against the unlawful use of force likely to cause death or great bodily harm, and that he is not required to retreat while he reasonably believes the aggressor is still armed and has the capacity to renew the attack.

Section 7—1 of the Criminal Code states:

"Use of Force in Defense of Person.] A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." Ill. Rev. Stat. 1971, ch. 38, ¶ 7—1.

■■ The critical language found in the statute is that a person who resorts to the use of force which is intended or likely to cause death or great bodily harm must do so only if "he *reasonably believes* that such force is necessary * * *." (Emphasis supplied.) Whether an individual's belief is reasonable raises a question of fact. (*People v. Brumbeloe*, 97 Ill.App.2d 370, 240 N.E.2d 150; *People v. Taylor*, 3 Ill. App.3d 734, 279 N.E.2d 143.) A finding by the trial court as to whether or not defendant's belief was reasonable will not be reversed unless it is clear that the finding was erroneous.

■■■ In the case at bar, the trial court determined that defendant's conduct was unwarranted under the circumstances and patently unreasonable. The trial court correctly ruled that an individual's belief must be reasonable as to when to resort to force, and the force used must be commensurate with the force encountered. Defendant was found to have used excessive force, and this finding will stand.

Next, defendant contends that the State failed to establish his guilt beyond a reasonable doubt because the State did not overcome the defense of self-defense.

■■ It is true that self-defense is an affirmative defense which must be rebutted by the State beyond a reasonable doubt. (*People v. Brown*, 19 Ill.App.3d 757, 312 N.E.2d 789.) However, the testimony of but one credible witness is enough to convict a defendant. *People v. Novotny*, 41 Ill.2d 401, 244 N.E.2d 182.

■■ There were two eyewitnesses—Joyce McGarry and the victim—who testified that defendant used excessive force; and their testimony was corroborated as to the various details by the testimony given by

Mr. Cox. Essentially, the court was confronted with a clear-cut question of credibility. The testimony of the State's occurrence witnesses was totally at odds with the testimony given by Fair and defendant. The court resolved these conflicts in favor of the State. We will not substitute our judgment for that of the trier of fact on issues of credibility unless proof was so unsatisfactory as to warrant a reasonable doubt of guilt. *People v. Reese*, 54 Ill.2d 51, 294 N.E.2d 288.

■■ We note sua sponte that the trial court's judgments of convictions were in error. Defendant was found guilty on three counts of aggravated battery and one count of disorderly conduct, and subsequently thereto judgments of conviction were entered on all counts. The trial court may not enter judgment on more than one offense arising from the same transaction, even if only one sentence is imposed. (*People v. Lilly*, 56 Ill.2d 493, 309 N.E.2d 1.) Accordingly, the judgment of conviction as to two of the three counts of aggravated battery and the one count of disorderly conduct must be vacated.

The circuit court's judgment of conviction as to a single count of aggravated battery is affirmed; the judgments on all other counts are vacated and this cause is remanded for the issuance of an amended *mittimus*.

Judgment affirmed in part, vacated in part, and remanded with directions.

TRAPP, P. J., and SIMKINS, J., concur.